UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Charles A. Stanziale, Jr.
Michael S. Waters
Lois H. Goodman
Jeffrey T. Testa
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
E-Mail: cstanziale@mdmc-law.com
mwaters@mdmc-law.com
lgoodman@mdmc-law.com
jtesta@mdmc-law.com

*Counsel to Trustee*

| | |
|---|---|
| In Re:<br><br>SOLOMON DWEK,<br><br>Debtor. [1] | Lead Case No.: 07-11757 (KCF)<br>(Jointly Administered)<br><br>Chapter 11<br><br>Judge: Kathryn C. Ferguson |

[1] The jointly administered estates include: Solomon Dwek, Case No. 07-11757 (KCF); 10 Neptune, LLC, Case No. 07-11974 (KCF); SEM Realty Associates LLC, Case No. 07-11976 (KCF); Deal Golf, LLC, Case No. 07-11982 (KCF); Dwek Trenton Gas, LLC Case No. 07-12794 (KCF); Neptune Gas, LLC, Case No. 07-12796 (KCF); Route 33 Medical, LLC, Case No. 07-12798 (KCF); 1111 Eleventh Avenue, LLC, Case No. 07-12799 (KCF); Dwek North Olden, LLC, Case No. 07-12800 (KCF); Dwek State College, LLC, Case No. 07-12802 (KCF); 1631 Highway 35, LLC, Case No. 07-16041 (KCF); 167 Monmouth Road, LLC, Case No. 07-16045 (KCF); 2100 Highway 35, LLC, Case No. 07-16048 (KCF); 230 Broadway, LLC, Case No. 07-16049 (KCF); 264 Highway 35, LLC, Case No. 07-16052 (KCF); 374 Monmouth Road, LLC, Case No. 07-16053 (KCF); 55 North Gilbert, LLC, Case No. 07-16054 (KCF); 601 Main Street, LLC, Case No. 07-16055 (KCF); 6201 Route 9, LLC, Case No. 07-16057 (KCF); Aberdeen Gas, LLC, Case No. 07-16058 (KCF); Bath Avenue Holdings, LLC, Case No. 07-16060 (KCF); Belmar Gas, LLC, Case No. 07-16061 (KCF); Berkeley Heights Gas, LLC, Case No. 07-16062 (KCF); Brick Gas, LLC, Case No. 07-16064 (KCF); Dover Estates, LLC, Case No. 07-16065 (KCF); Dwek Gas, LLC, Case No. 07-16066 (KCF); Dwek Hopatchung, LLC, Case No. 07-16067 (KCF); Dwek Income, LLC, Case No. 07-16068 (KCF); Dwek Ohio, LLC, Case No. 07-16069 (KCF); Dwek Pennsylvania, LP, Case No. 07-16071 (KCF); Dwek Wall, LLC, Case No. 07-16072 (KCF); Dwek Woodbridge, LLC, Case No. 07-16073 (KCF); Kadosh, LLC, Case No. 07-16074 (KCF); Lacey Land, LLC, Case No. 07-16075 (KCF); Monmouth Plaza, LLC, Case No. 07-16076 (KCF); P & Y Holdings, LLC, Case No. 07-16077 (KCF); Sugar Maple Estates, LLC, Case No. 07-16078 (KCF); West Bangs Avenue, LLC, Case No. 07-16079 (KCF); Beach Mart, LLC, Case No. 07-16104 (KCF); Seven Broad, LLC, Case No. 07-17124 (KCF); Dwek Apartments, LLC, Case No. 07-18315 (KCF); Dwek Raleigh, LLC, Case No. 07-18316 (KCF); Greenwood Plaza Acquisitions, LLC, Case No. 07-18317 (KCF); Sinking Springs II, LP, Case No. 07-18318 (KCF); Sinking Springs, LP, Case No. 07-18320 (KCF); Neptune Medical, LLC, Case No. 07-18766 (KCF); Bridgeton Building, LLC, Case No. 07-19629 (KCF); Dwek Properties, LLC, Case No. 07-20939 (KCF); WLB Center, LLC, Case No. 07-21752 (KCF); Dwek Branches, LLC, Case No. 07-22035 (KCF); Dwek Assets, LLC, Case No. 07-22036 (KCF); Asbury Gas, LLC, Case No. 07-22632 (KCF); Jemar Enterprises, LLC, Case No. 07-22633 (KCF); Melville Dwek,

| | |
|---|---|
| CHARLES A. STANZIALE, JR., as Chapter 11 Trustee of Solomon Dwek and SEM Realty Associates, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR TAWIL and HORIZON EXPORT, LLC,<br><br>Defendants. | Adv. Pro. No. 07- |

**ADVERSARY COMPLAINT BY CHARLES A. STANZIALE, JR., AGAINST DEFENDANTS VICTOR TAWIL AND HORIZON EXPORT, LLC**

Plaintiff Charles A. Stanziale, Jr., by way of Complaint against defendants Victor Tawil and Horizon Export, LLC (the "Ponzi Participants"), hereby alleges:

**PARTIES**

1. Plaintiff Charles A. Stanziale, Jr. ("Stanziale" or the "Trustee"), is the Court approved Chapter 11 trustee of, among others, debtors Solomon Dwek ("Dwek") and SEM Realty Associates, LLC ("SEM").

2. Victor Tawil, on information and belief resides in Brooklyn, New York, and obtained fictitious profits from SEM. Horizon Export, LLC on information and belief is a limited liability corporation located at 57 W. 38th Street, New York, New York 10018-5500, and obtained fictitious profits from SEM.

LLC, Case No. 07-22634 (KCF); Newport WLB, LLC, Case No. 07-22635 (KCF); Red Bank Gas, LLC, Case No. 07-22636 (KCF); WLB Highway, LLC, Case No. 07-22638 (KCF); Belmont Properties, LLC, Case No. 07-22898 (KCF); Tinton Falls Land, LLC, Case No. 07-23872 (KCF); and Copper Gables, LLC, Case No. 07-24829 (KCF), Dwek Homes, LLC, Case No. 07-24832; Myrtle Avenue Land, LLC, Case No. 07-24836 (KCF), Grant Avenue Estates, LLC, Case No. 07-24837 (KCF), Neptune City Stores, LLC, Case No. 07-24839 (KCF); 170 Broad, LLC, Case No. 07-24922 (KCF); Dwek Land, LLC, Case No. 07-25349; Dwek Motors, LLC, Case No. 07-25350; Waretown Shops, LLC, Case No. 07-25668; and Monmouth Consulting Services, LLC, Case No. 07-25913.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Federal Rules of Bankruptcy Procedure 7001(1), (2), (7) and (9). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), & (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## I. BACKGROUND

### A. Case Filings and Appointment of Trustee

5. On February 9, 2007, several creditors of Dwek filed an involuntary petition for relief (Case No. 07-11757 (KCF)) (the "Dwek Bankruptcy") under Chapter 7 of title 11 of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

6. On February 13, 2007, SEM filed a voluntary petition for relief under Chapter 11 of the Code in the Bankruptcy Court (Case No. 07-11976 (KCF)) (the "SEM Bankruptcy").

7. At all times relevant, Dwek managed and controlled SEM.

8. On February 22, 2007, on motion by Dwek, the Dwek Bankruptcy was converted to a case under Chapter 11 of the Bankruptcy Code.

9. On February 22, 2007, the SEM Bankruptcy was administratively consolidated with the Dwek Bankruptcy.

10. On March 2, 2007, the Bankruptcy Court entered an Order approving the appointment of Stanziale as the Trustee in, among others, the Dwek Bankruptcy and the SEM Bankruptcy.

**B. The Ponzi Scheme**

11. At all times relevant, Dwek engaged in a course of conduct wherein he received investment funds from numerous individuals and entities ("Investors") with a promise of a guaranteed return in a specified period of time.

12. At all times relevant, Dwek also obtained unsecured loans from at least one individual banking professional and several financial institutions ("Unsecured Lenders") based on Dwek's representations that Dwek was going to utilize the proceeds to, among other things, purchase real estate.

13. At all times relevant, Dwek also obtained personal loans from financial institutions and other individuals and entities ("Wrap Mortgagees") that were secured by second, third, or fourth mortgages on properties owned by limited liability companies in which Dwek was a sole member or owned less than all membership interests.

14. At all times relevant, Dwek represented to the Wrap Mortgagees that the proceeds from the loans would be used to, among other things, purchase real properties.

15. At all times relevant, on numerous instances, Dwek misrepresented to Investors, Unsecured Lenders and Wrap Mortgagees that Dwek had secured contracts to purchase certain real properties at a set price and had simultaneously secured contracts to sell those same properties to a fictitious third party at a set price.

16. In other instances, Investors, Unsecured Lenders and Wrap Mortgagees were not informed which properties were being acquired or maintained with the funds, or the source of the funds used to repay Investors, the Unsecured Lenders or the Wrap Mortgagees.

17. Virtually all of the funds received from Investors, Unsecured Lenders and Wrap Mortgagees were commingled in the SEM Account and were not devoted to a specific investment or property.

18. Dwek utilized a portion of the proceeds that he received from Investors, Unsecured Lenders and Wrap Mortgagees to purchase real estate, to donate to charitable religious organizations, to improve real estate, or to fund operating shortfalls on properties (e.g., properties that did not generate sufficient income to cover carrying costs including, but not limited to, mortgage debt service, insurance, real estate taxes, maintenance fees and management fees) that he owned individually or by and through limited liability companies that he owned in whole or in part.

19. Dwek utilized an overwhelming majority of the proceeds that he received from new Investors, Unsecured Lenders and Wrap Mortgagees to repay previous Investors their original investments plus significant fictitious profits.

20. In many instances, Dwek did not sign any document in favor of Investors evidencing their investments, their promised returns or the date of the promised returns, and did not provide specific information as to how the funds were utilized in order to obtain the fictitious profits.

21. In many instances, Investors received their principal investments and significant fictitious profits within months of their investments. Some of the Investors received fictitious profits of between 20% and 50% annualized. These Ponzi Participants received fictitious profits of approximately 27% annualized. These fictitious profits were at the expense of subsequent Investors, Unsecured Creditors and Wrap Mortgagees.

22. Dwek was able to raise money from new Investors by delivering false profits to earlier Investors and creating an illusion that he was a successful, philanthropic real estate mogul who delivered incomparable investment returns.

23. At all times relevant, in order to create the perception that he was a philanthropist, Dwek donated millions of dollars of fraudulently obtained funds to religious organizations.

24. At all times relevant, Dwek orchestrated a massive "Ponzi" scheme wherein he would utilize funds to repay Investors and carry the enterprise until it all collapsed in April 2006.

**C. SEM's Fraudulent Transfers of Funds to the Ponzi Participants**

25. On information and belief, Dwek, through SEM, made one or more fraudulent transfers of funds obtained through the Ponzi scheme to the Ponzi Participants during the period between February 10, 2003, and February 9, 2007. The total of the payments by SEM to the Ponzi Participants during that period amounted to $580,000 (the "Total Transfer").

26. The transfers by Dwek through SEM to the Ponzi Participants were made through SEM's PNC Bank Account, 80-1659-7311, as follows:

| **DATE** | **AMOUNT** | **MANNER OF PAYMENT** |
|---|---|---|
| 04/25/06 | $580,000 | Wire Transfer |

27. During the relevant time period, the Ponzi Participants invested the sum of $500,000 with Dwek through SEM, and received the Total Transfer of $580,000 which included false profits of $80,000 (the "Fictitious Profits").

28. The Ponzi Participants are very successful in business and sophisticated investors.

29. The Ponzi Participants have experience purchasing and selling commercial and residential real estate.

30. On information and belief, the Ponzi Participants conducted virtually no due diligence in connection with any investment with Dwek.

31. The Ponzi Participants did not request appraisals for any of the real estate that may have been the alleged subject of an investment.

32. The Ponzi Participants did not contact any closing attorney.

33. The Ponzi Participants did not attend any closings in connection with any real estate that may have been the alleged subject of an investment.

34. The Ponzi Participants did not receive a closing statement for the purchase and sale of any property.

35. The Ponzi Participants did not contact any alleged seller or buyer of any property that may have been the alleged subject of an investment.

36. The Ponzi Participants did not independently order any title report for any property that may have been the alleged subject of an investment.

37. The Ponzi Participants did not retain independent counsel in connection with any investment with Dwek.

38. On information and belief, the Ponzi Participants did not receive an IRS Form 1099 for any investment made with Dwek.

39. Had the Ponzi Participants conducted any form of due diligence prior to investing, the Ponzi Participants would have ascertained that a fraud was being perpetrated.

40. The Ponzi Participants knew or should have known that Dwek was not using funds advanced by the Ponzi Participants for the purchase and sale of real properties.

41. The Ponzi Participants were eager to profit in the extraordinarily large false profits promised by Dwek, and ignored all signs that would have provided notice that the Total Transfer was fraudulent.

42. Notwithstanding the lack of documentation, the Ponzi Participants made the investment with Dwek and received the Total Transfer including the Fictitious Profits.

43. On information and belief, the Ponzi Participants knew or should have known that Dwek had been engaged in a "Ponzi" scheme.

44. The Ponzi Participants, among others, enabled Dwek to continue the Ponzi scheme and were direct participants in that scheme without regard to its effect on third parties.

45. As a result of the Ponzi Participants' receipt of the Total Transfer including the Fictitious Profits, the Ponzi Participants received a benefit that was denied to other Investors.

## COUNT I

## FRAUDULENT TRANSFER PURSUANT TO CODE §§ 548(a)(1)(A) & 550

46. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 45 as if fully set forth herein.

47. During the period between February 10, 2003, and February 9, 2007, Dwek, through SEM, paid the Total Transfer to the Ponzi Participants.

48. Dwek, through SEM, made the Total Transfer to the Ponzi Participants with actual intent to hinder, delay and defraud SEM's creditors.

49. The Trustee is entitled to return of the Total Transfer paid to the Ponzi Participants by SEM.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

**COUNT II**

**FRAUDULENT TRANSFER PURSUANT TO**
**CODE §§ 548(a)(1)(B) & 550**

50. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 49 as if fully set forth herein.

51. SEM paid the Total Transfer to the Ponzi Participants without receiving reasonably equivalent value in exchange.

52. As a result of SEM's payment of the Total Transfer to the Ponzi Participants, SEM engaged in transactions for which the remaining assets of SEM were unreasonably small in relation to those transactions.

53. As a result of SEM's payment of the Total Transfer to the Ponzi Participants, SEM incurred debt beyond its ability to pay as the debt became due.

. **WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

**COUNT III**

**FRAUDULENT TRANSFER PURSUANT TO**
**CODE §544 AND N.J.S.A. 25:2-25.a**

54. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 53 as if fully set forth herein.

55. SEM paid the Total Transfer to the Ponzi Participants with actual intent to hinder, delay and defraud SEM's creditors.

56. The Trustee is entitled to return of the Total Transfer paid to the Ponzi Participants by SEM.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

**COUNT IV**

**FRAUDULENT TRANSFER PURSUANT TO**
**CODE §544 AND N.J.S.A. 25:2-25.b**

57. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 56 as if fully set forth herein.

58. Payment of the Total Transfer to the Ponzi Participants was intended to, and SEM believed or reasonably should have believed that it would, incur debts beyond its ability to pay them as they became due. As a result of payment of the Total Transfer to the Ponzi Participants, SEM was left with unreasonably small remaining assets in relation to the transactions.

59. SEM did not receive reasonably equivalent value in exchange for the Total Transfer.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

**COUNT V**

**FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-27.a**

60. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 59 as if fully set forth herein.

61. SEM did not receive reasonably equivalent value in exchange for payment of the Total Transfer to the Ponzi Participants.

62. As a result of payment of the Total Transfer to the Ponzi Participants by SEM, SEM incurred debt beyond its ability to pay as the debt became due.

63. At the time of payment of the Total Transfer by SEM to the Ponzi Participants, SEM was indebted to other parties.

64. As a result of payment of the Total Transfer to the Ponzi Participants, SEM became insolvent or was insolvent at the time of the transfers.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT VI

## FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-27.b

65. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 64 as if fully set forth herein.

66. At the time of payment of the Total Transfer by SEM to the Ponzi Participants, SEM was indebted to other parties.

67. Payment of the Total Transfer to the Ponzi Participants by SEM was made in payment of an antecedent debt.

68. SEM became insolvent or was insolvent at the time of payment of the Total Transfer to the Ponzi Participants, and the Ponzi Participants had reasonable cause to believe that SEM was insolvent.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Total Transfer paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT VII

## FRAUDULENT TRANSFER PURSUANT TO CODE §§ 548(a)(1)(A) & 550

69. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 68 as if fully set forth herein.

70. During the period between February 10, 2003, and February 9, 2007, Dwek, through SEM, paid the Fictitious Profits to the Ponzi Participants.

71. Dwek, through SEM, paid the Fictitious Profits to the Ponzi Participants with actual intent to hinder, delay and defraud SEM's creditors.

72. The Trustee is entitled to return of the Fictitious Profits paid to the Ponzi Participants by SEM.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT VIII

## FRAUDULENT TRANSFER PURSUANT TO CODE §§ 548(a)(1)(B) & 550

73. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 72 as if fully set forth herein.

74. SEM paid the Fictitious Profits to the Ponzi Participants without receiving reasonably equivalent value in exchange.

75. As a result of SEM's payment of the Fictitious Profits to the Ponzi Participants, SEM engaged in transactions for which the remaining assets of SEM were unreasonably small in relation to those transactions.

76. As a result of SEM's payment of the Fictitious Profits to the Ponzi Participants, SEM incurred debt beyond its ability to pay as the debt became due.

. **WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT IX

## FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-25.a

77. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 76 as if fully set forth herein.

78. SEM paid the Fictitious Profits to the Ponzi Participants with actual intent to hinder, delay and defraud SEM's creditors.

79. The Trustee is entitled to return of the Fictitious Profits paid to the Ponzi Participants by SEM.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT X

## FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-25.b

80. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 79 as if fully set forth herein.

81. Payment of the Fictitious Profits to the Ponzi Participants was intended to, and SEM believed or reasonably should have believed that it would, incur debts beyond its ability to pay them as they became due. As a result of payment of the Fictitious Profits to the Ponzi Participants, SEM was left with unreasonably small remaining assets in relation to the transactions.

82. SEM did not receive reasonably equivalent value in exchange for payment of the Fictitious Profits to the Ponzi Participants.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT XI

## FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-27.a

83. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 82 as if fully set forth herein.

84. SEM did not receive reasonably equivalent value in exchange for its payment of the Fictitious Profits to the Ponzi Participants.

85. As a result of payment of the Fictitious Profits to the Ponzi Participants by SEM, SEM incurred debt beyond its ability to pay as the debt became due.

86. At the time of payment of the Fictitious Profits by SEM to the Ponzi Participants, SEM was indebted to other parties.

87. As a result of payment of the Fictitious Profits to the Ponzi Participants, SEM became insolvent or was insolvent at the time of the transfers.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT XII

## FRAUDULENT TRANSFER PURSUANT TO CODE §544 AND N.J.S.A. 25:2-27.b

88. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 87 as if fully set forth herein.

89. At the time of payment of the Fictitious Profits by SEM to the Ponzi Participants, SEM was indebted to other parties.

90. Payment of the Fictitious Profits to the Ponzi Participants by SEM was made with respect to an antecedent debt.

91. SEM became insolvent or was insolvent at the time of the payment of the Fictitious Profits to the Ponzi Participants, and the Ponzi Participants had reasonable cause to believe that SEM was insolvent.

**WHEREFORE**, the Trustee demands that judgment be entered against the Ponzi Participants:

a. Ordering return of the Fictitious Profits paid by SEM to the Ponzi Participants;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT XIII

## ACCOUNTING

92. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 91 as if fully set forth herein.

93. The Ponzi Participants were unjustly enriched and substantially profited at the expense of SEM and its creditors.

94. On information and belief, the Ponzi Participants, or other entities the Ponzi Participants control or in which the Ponzi Participants have an interest, received payments, benefits and/or services from Dwek, SEM or one or more other entities managed and controlled by Dwek.

95. The Trustee is entitled to obtain a full and accurate description of the amount and use of funds, benefits or services conveyed directly or indirectly to or for the benefit of the Ponzi Participants, or other entities the Ponzi Participants control or in which the Ponzi Participants have an interest, for the time period referenced in the Complaint relating to payments, benefits or services received from Dwek, SEM or one or more other entities managed and controlled by Dwek to assist the Trustee and the Court in the resolution of this controversy.

**WHEREFORE**, the Trustee is entitled to and demands an accounting of all funds, benefits and services received directly or indirectly by or for the benefit of the Ponzi Participants, including those paid to other entities which the Ponzi Participants control or in which the Ponzi Participants have an interest, with the date and amount of each transaction, the entity or individual(s) that withdrew or were paid the funds, and the ultimate use or disposition of the funds or other things of value for the time period referenced in the Complaint.

## COUNT XIV

## TURNOVER OF ESTATE PROPERTY PURSUANT TO CODE § 542

96. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 95 as if fully set forth herein.

97. The Ponzi Participants were unjustly enriched and substantially profited at the expense of SEM and its creditors.

98. On information and belief, the Ponzi Participants, or other entities the Ponzi Participants control or in which the Ponzi Participants have an interest, received payments, benefits and/or services from Dwek, SEM or one or more other entities managed and controlled by Dwek.

99. Pursuant to 11 U.S.C. § 542, the Ponzi Participants are required to deliver to the Trustee, and account for, such payments, benefits and/or services, or the value of such benefits and services, received by the Ponzi Participants, or other entities the Ponzi Participants control or in which the Ponzi Participants have an interest, from Dwek, SEM or one or more other entities managed and controlled by Dwek.

**WHEREFORE**, the Trustee demands judgment be entered that the Ponzi Participants shall deliver to the Trustee, and account for, such payments, benefits and services, or the value of such benefits and services provided for the Ponzi Participants' benefit or personal interest, including those paid to other entities which the Ponzi Participants control or in which the Ponzi Participants have an interest, which were received from Dwek, SEM or one or more other entities managed and controlled by Dwek for the time period referenced in the Complaint.

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Trustee

/s/ Charles A. Stanziale, Jr.
By: CHARLES A. STANZIALE, JR.

Dated: January 14, 2008